S. M. HENDERSON et al., Appellants, v. THE BOARD OF SUPERVISORS OF POLK COUNTY, et al., Appellees.

**DRAINS:** Drainage District—Efficiency—Benefits Commensurate
1  **with Costs.** Evidence reviewed and held to show that the drainage scheme in question was practicable and would benefit the lands to an appreciable extent.

**APPEAL AND ERROR:** Preparation of Appeal—Rules—Violation—
2  **When Penalized.** A violation of the rules governing the preparation of abstracts, arguments, etc., made in a good-faith effort to aid the court, will not necessarily be penalized. (Rule 53.)

PRINCIPLE APPLIED: In presenting an appeal from an order establishing a drainage district, the appellant included in his brief a condensation of the testimony of each witness. Such condensation did aid the court in arriving at the state of the evidence. *Held,* appellant should not be penalized.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

FRIDAY, JUNE 18, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

IN the district court, this proceeding was an appeal from an order of the board of supervisors establishing a drainage district. Upon hearing had, the order of the supervisors was confirmed by the district court. From such order of the district court, this appeal is prosecuted.—*Affirmed.*

*Thos. A. Cheshire,* for appellants.

*John J. Halloran* and *E. J. Kelley,* for appellees.

EVANS, J.—I. The proposed district comprises between 1,000 and 1,100 acres of land adjacent to the Skunk River. The proposed ditch will be about three miles in length and its

1. DRAINS : drainage district: efficiency : benefits commensurate with costs.

estimated cost will be between $10,000 and $11,000. The proposed district comprises certain low, flat lands lying on the west side of the present Skunk River. The width of the tract varies from ninety rods to three-quarters of a mile. This tract is bounded on the westerly side by certain high land, or hills. On its easterly side, it is bounded by the Skunk River, or the Skunk River ditch, as it is called in the record. It appears that about thirty years ago, an artificial ditch was constructed to take the flow of the river. This ditch was laid in a practically straight line. It has been effective to take all of the flow of the river, and the old river channel has been thereby superseded. Between this river ditch and the hills to the west, there is a considerable body of land which is lower than the banks of the river ditch. It contains also many depressions. The water from the hills is naturally thrown upon this low land. It finds its way into the depressions and becomes stagnant. In case of flood overflowing the banks of the main stream, a like result follows. The proposed plan contemplates an additional ditch which shall run practically parallel with the main stream for a distance of about

three miles and which shall discharge into the main stream at its lower terminus. The purpose to be subserved is the draining of these stagnant pools.

The appellants are owners of some of the lands included in the district. The general nature of their objections is that the scheme is impracticable and that the benefit, if any, to be derived is not commensurate with the expense to be incurred. It is shown that the fall is slight and that the current will necessarily be somewhat sluggish. As indicated by the elevations along the grade line or bottom of the ditch, the fall will be about three feet to the mile. The objections of the appellants may be summarized into two general propositions: (1) That the fall along the course of the ditch is so slight that it will immediately fill with the silt deposits as a result of the sluggish flow; and (2) that, though the ditch be constructed as proposed and be kept open and free from the natural obstructions of silt deposits, it cannot be effective to drain the lands involved.

The issue between the parties as presented here is purely one of fact. The conflict of evidence is largely a contest of expert opinion. Such expert opinion is necessarily largely hypothetical. Six engineers have testified on behalf of the appellants and four have testified on behalf of the public authorities. There is something to be said candidly for both sides of the controversy. The water that comes down from the hills comes with considerable velocity until it strikes the low land here involved. When it loses its velocity at the foot of the hill, it naturally precipitates its silt. It is contended, therefore, for the appellants that this silt will immediately fill the ditch and render it useless. It appears, also, that the main stream is subject to considerable overflow. Such overflow also naturally precipitates its silt when its waters are released from the swifter current of the main stream. It appears that the banks of the main stream are about two feet higher than the great body of land farther away. This high elevation of the banks is effective to create the pools already

referred to. Whether this higher elevation of the banks has been caused by the deposit of the silt or whether it has been caused in part by remnants of the soil banks made by the original construction is somewhat in dispute. It is the contention of the appellants that this elevation has been caused by the deposit of silt and that the same deposit will fill the new ditch proposed. The engineers on both sides agree that the overflowing waters of a stream will always deposit the greatest amount of silt next to the stream. This is so because the water loses its current velocity when it escapes over the banks and the loss of velocity causes the precipitation.

Assuming that the higher elevation of the banks in this case is the result of silt deposits from the overflow of the main stream, the fact remains that silt deposits have never heretofore extended far beyond such banks. It is contended for the appellants, also, that the water which comes from the hills is heavily charged with silt and that this will necessarily be discharged into the new ditch. It appears that there are various ditches and ravines which discharge the water from the hills onto the low ground. It is urged for appellants that these ditches have invariably filled with silt. Such filling, however, appears to be at the base or toe of the hill in every case. The effect of this is to build up the land at the base of the hill and at the outer edge of the low ground.

Taking the testimony of all the engineers pro and con, we are impressed that no great amount of silt has ever reached the lower ground along which the line of the proposed ditch is to run, and this is one reason why it is low ground. If there had been silt enough to build up the ground to as high an elevation as the banks of the stream, the particular drainage problem now presented would be more simple. It is true that this proposed ditch must be more or less sluggish according as the water in the main stream shall be high or low. At the outlet, there must be more or less backwater, and this will tend to the deposit of all the silt

which the water contains. On the other hand, we are quite satisfied, also, that the problem of clearing the stream and keeping it open will not be a difficult one.

As to the efficiency of the proposed ditch at its best, it is urged that it cannot prevent the usual overflows of the main stream and that therefore it can be of no effective service for the purpose of drainage. It is undeniably true that the proposed ditch will have no influence whatever to prevent the overflow in times of flood of the main stream. Nor could it serve any particular function during the period of an overflow. If we were to assume a perpetual flood overflowing such stream, then it could truly be said that the proposed ditch could render no service whatever. But the flood is not perpetual. The very purpose of the proposed ditch is to carry away the pools of residue which would otherwise be left after the flood has passed by and after the stream has returned to its banks. Granting that the proposed ditch cannot be effective to render all the low land tillable, the fact remains that it will render some of it tillable and that it will render much, if not all, of it more useful for meadow and pasture purposes. In other words, it will benefit the land to an appreciable extent. It appears that similar ditches have been heretofore constructed for similar purposes along the line of the Skunk River. Some of them have been constructed in the same county as the present proposed ditch. It is in dispute between the parties as to whether such ditches have been successful or not. Their practical efficiency, such as it was, came within the observation of the board of supervisors which acted upon the present petition. It appears also, as already indicated, that the main stream of the Skunk River has been carried by an artificial ditch for more than thirty years. Such main ditch is more than 14 or 15 miles long in this part of the course. This main ditch has been efficient and has gradually enlarged and deepened itself. So far as its grade line is concerned, it cannot be materially different from the grade line of the proposed ditch. These are prac-

tical facts which are open to observation and are entitled to their appropriate weight in reaching a conclusion as to the probable efficiency of the proposed ditch. It may be true that the land at the head of the ditch may gain a greater benefit therefrom than that nearer its outlet. Even then, such inequality, if any, can be met in the assessment of benefits.

Upon the whole record, we are satisfied that the board of supervisors was justified in reaching a conclusion favorable to the establishment.

II. Some dispute is presented in the briefs as to the method of presentation adopted by the appellants and we are asked by the appellees to penalize the appellants there-

2. APPEAL AND ERROR: preparation of appeal: rules: violation: when penalized.

for. The record as presented in the abstract is very voluminous. The appellants have included in their brief a condensation of the testimony of each witness so far as the same bears upon the material points of the case. It was done with a view of reducing the labor of the court in arriving at the state of the evidence. The appellees deny the correctness of the condensation *in toto,* and ask that we disregard the same and penalize the appellants therefor. We see no reason for questioning the good faith of appellants' counsel in the method adopted. It has been an aid to us in arriving at the real state of the evidence. It was, of course, open to the appellees to point out omissions or inaccuracies, if any, and this would have been of equal aid to us. A mere sweeping denial in such case is not as helpful as specifications.

For the reasons already indicated, the order of the court below must be—*Affirmed.*

DEEMER, C. J., WEAVER and PRESTON, JJ., concur.